May it please the Court, my name is Mark McBride. I represent the individual petitioner here, Marcos Enriquez. It's a pleasure to be here. I've never been in front of the Court here. I'll try to get to the issues quickly. This Court issued a Certificate of Appealability on Ineffective Assistance of Counsel. I would just like to make a couple quick points. One is a more procedural argument and one is a more substantive argument. The procedural argument is that the concern I have with the Court of Appeals opinion from the State of California, I think is pretty obvious and I feel it's an undue and an overly rigorous application of the prejudice principle from Strickland. Everybody knows Strickland has the two prongs. The prejudice principle is very hard to get over. It's been that way since the decision came down. I did some reading on Strickland last night and Justice O'Connor, in deciding on the proper standard of prejudice, defines it this way and the Court of Appeal states it correctly, but I don't think they apply it quite fairly. The defendant must show that there is a reasonable probability that but-for professional counsel's errors as a result of the proceeding would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome. I think courts oftentimes get a little wrapped up in the but-for language. I think it's not strictly but-for and, in fact, as she defines the test in the language previous to that, she equates the prejudice standard something akin to the Valenzuela-Bernal standard, which is not an incredibly rigorous application of prejudice, needs to be shown. Also, I note that Justice O'Connor, in her opinion, she has explicitly rejected the government's argument in Strickland that the standard ought to be something along the lines of the motion for a new trial standard in Rule 33. Mr. McBride? Yes, sir. Hearing what you just said, bearing in mind that we are reviewing this conviction under AEDPA, don't we have to give a substantial amount of deference to the judgment of the California Court of Appeals in applying the Strickland standard? Isn't that really what we have to wrestle with as a Federal Court of Appeal? In other words, we would have to declare that the conclusion by the California Court of Appeals was so objectively unreasonable when it found that there was no prejudice in order to grant you the relief that you're asking for. Sure, sure. Well, that takes me to the substance of the argument, and the intriguing thing about this case is that you have such a candid declaration from defense counsel. I don't know if that happens a lot in this court. It does. In fact, we sometimes get defense counsel arguing that they were ineffective. I did it. Fall on the sword. All right. So you know it's not unusual. It's become a defense rather than something else. An affirmative defense. I guess I'm naive a little bit then, but honestly, I just – there are four errors assigned to counsel, and let me be honest, the Fifth Amendment issue I don't think is terribly persuasive. I don't know if I would contact another defense lawyer and say, hey, why don't you have your guy take the Fifth Amendment. The deaf juror issue, I don't know. That's a tough issue. But the character evidence issue and the closing argument issue, yes, sir. Mr. McBride, let me ask about the Fifth Amendment. Yes. Now, if Macias had asserted his Fifth Amendment privilege, could the tape-recorded interrogation have been admitted as evidence during the trial? I think the way that you would have to get it in would be to have – I think you'd have to call the detective to the stand and have it come in that way as a sort of declaration against penal interest. So, yeah, I think that it would. Yes, ma'am. Well, that raises a question of what difference it made. I think you're right not to place a lot of emphasis on the Fifth Amendment issue and go on to your character issue. Right. I mean, I have ten minutes. Answer to that question. Yeah. The Fifth Amendment issue, I'll concede, I don't think is particularly strong. The character evidence is such a problem in this case, and the closing argument, they kind of all dovetail together. The defense lawyer here, who's been practicing in front of the bar for years, says in his declaration, I didn't know about the opening-the-door principle. I mean, that's scary. I mean, he calls these witnesses to the stand, and he says, I don't know about the opening-the-door principle. So they testify as to his good character. Is this Ted Yamamoto? Yes, sir. We've seen him before on advocacy claims. Yeah. Hopefully standing here, not down below. Well, no. Actually, well, I will not say anything more. You said his name. I didn't want to. Well, his name's in the record. Oh, sure, sure. I just recognized it from another. I'm trying to kind of. So he asks the witnesses about the good character. It comes out. The prosecutor goes to sidebar and says, well, then I think I should be able to impeach them with this prior bad act stuff. The judge says to the prosecutor, I think rightly and fortunately, you can ask about the crimes, but not the substance of it. The prosecutor then gets up on cross and says, not only didn't you know he was convicted of crimes, but of a crime of driving the 1982 white Toyota? I mean, if that's not a permeated, searing thought in the juror's mind, I don't know what it is. This comes out again and again with Mr. Yamamoto's witnesses who aren't prepared. Not only does he say. Do you think that caused him to convict an innocent man? With all due respect to the court, I don't think the standard is innocence, but I do have a serious concern with identification here in this case was not a dead bang winner for the prosecution. And so then you get into the closing argument where the prosecutor makes almost a sort of quasi Griffin error where the prosecutor says to the to the jury. Well, you know, I think that we can now tie him up with the Toyota. Only then does Mr. Yamamoto object. And I'll note that the trial court appears pretty, pretty concerned about all this because the trial court and it's in a footnote in the excerpt of record. The trial court says, no, you open the door. Once it's in, it's in. I think the trial court was pretty troubled by all this. And so I think the I think that the prosecutor's argument. First of all, I think the prosecutors asking them about the substance of the crimes three times I think is awful. I mean, to me, it's almost a mistribal issue right there. Why Mr. Yamamoto didn't object. I don't know, but I think that's almost mistribal right there. And then he he he talks about a witness who never a witness who never even testifies. Just it wasn't a fair trial. The defense side of this trial, the direct of the witnesses weren't weren't prepared. Closing argument was a fiasco. And I would respectfully ask that the court reverse this conviction. Thank you. Thank you, Mr. McBride. We'll reserve the remainder of your time for rebuttal. And Ms. Kemp. At some point, would you tell us what the narrow issue is before this court and how, in your view, it should be resolved and why? But go ahead with the argument. Oh, I'm sorry. I didn't hear the first part. What the narrow issue is before this court. Because we we could go all over the map, but we aren't doing a new trial. Yes, Your Honor. Go ahead. And the reason is he's going to have a few minutes to rebut, and he needs to answer. Yes, Your Honor. Good morning, Your Honors. Deputy Attorney General Susan Kemp, a respondent. In this case, Petitioner is not. Ms. Kemp, would you please speak up? Oh, yes. In this case, Petitioner is not entitled to federal habeas relief on any of his claims of ineffective assistance of trial counsel. And the the main reason is because he's not prejudiced by any of these alleged deficiencies. In this case, there are three eyewitnesses that identified Petitioner as the shooter in both of the shooting incidents that occurred on July 27, 1997. Two of the shooting victims, Mr. Rios and Mr. Lerma, who were both shot by Petitioner from a car, testified that Petitioner was the shooter, and also both independently identified Petitioner from a photographic lineup. In the second incident where Mr. Nava was the actual victim, there was a woman named Ms. Vasquez who was present during that attempted shooting, and she identified Petitioner as the person that tried to shoot Mr. Nava. He actually didn't succeed because his gun didn't work. And she also identified Petitioner from a photographic lineup. So this is a case where you have three eyewitnesses, each pointing to Petitioner as a shooter in this case. In light of this kind of overwhelming evidence, any alleged deficient performance by Petitioner's trial attorney, clearly Petitioner cannot meet his burden under Strickland of showing that he was prejudiced in this case. And regarding the character evidence which Petitioner complains about, in this case, Petitioner is saying that, oh, Petitioner admitted that he drove a stolen white Toyota, and this was very damaging to his case. However, Mr. Macias, who was also a VNE gang member, as was Petitioner, both admitted that. In Mr. Macias's tape-recorded interview with Detective Rivera, he indicated that this stolen white Toyota was driven by everybody in the VNE gang, and the fact that Petitioner admitted that he drove it in, I believe, September of 1997, did not necessarily point to his overwhelming guilt, based on that alone, that he was a shooter in July of 1997. And as far as the other questions and answers that were given by the three character witnesses in this case, defense witnesses, who were Petitioner's mother, Maria Tovar, Petitioner's sister, Norma Enriquez, and Petitioner's friend, Raul Ramirez, the jury was instructed with Calgic No. 2.42 that these questions and answers were not, the purpose of these was to weigh the evidence of the character witness's testimony, and not necessarily that the questions and answers and the things stated in those were true or not true. Also referring to the prosecutor's closing rebuttal argument that Petitioner complains about, for the same reasons, you know, even though the prosecutor did mention something about Petitioner's fiancee unwilling to testify, the court of appeal went and said, okay, despite the prosecutor's misstep in that area, still no prejudice, because the jury was instructed with Calgic No. 2.11, which basically says that neither side is required to present all the witnesses who may have known something about the events or been present at the events. And the jury was also given the burden of proof, Calgic No. 2.90, as well as 1.02 regarding the fact that attorney's statements are not to be considered evidence. And again, the overwhelming eyewitness evidence in this case, Petitioner cannot show he was prejudiced by any remarks by the prosecutor in that regard. You know, Counsel, I wondered, could Mr. Messia have asserted his Fifth Amendment privilege about the question of the shooting of Rios and Verma, as opposed to Nava and Vesquez? I believe at this point he … He would not have incriminated himself with respect to the first two, would he? Well, from his interview, he did, when the detective asked him about the fact that Mr. Messias was identified by other people as the driver of the car in the Rios and Verma shooting, the transcript shows that Mr. Messias seemed to acknowledge that's the fact. So I would argue that he did acknowledge his involvement in that shooting. He didn't go into detail, as with the Nava shooting, where he said, I was definitely the driver and Petitioner was the passenger shooter in that case. But Mr. Messias did seem to indicate in his transcript in the interview that he was somehow involved in that particular shooting of Rios and Verma, Mr. Verma. Even though he was doing time on the other one? Is that it? Was he convicted? The record isn't totally clear. It appears that he was probably doing some prison time for the Nava shooting, because he, in his interview, he expressly indicated, I was driving that car and Petitioner was with me as a shooter. With the Rios and Verma shooting, it's a little less clear, although I would argue that he still, from reading the record, it still appears that he admits some type of involvement, although not as expressed and not as detailed as the other Nava shooting. And I guess the record is also a little fuzzy as to what the status was. Yes, of his conviction. Yes, that is correct, Your Honor. And unless Your Honors have any further questions, I believe the others have been briefed. I don't think we have anything else. Thank you, Ms. Kim. Thank you very much. Mr. McBride. Just quickly, you know, the dilemma I have with, I want to get to the narrow issue in this case, and I think the narrow issue in this case really is just exactly what must you show regarding prejudice in light of the California Court of Appeals opinion. I don't know. Again, I go back to the question I asked you when you were up the last time. If we were on direct appeal, that argument would have greater force with me. The problem I'm having is I've got to look at it through the EDPA lens. And the question is, let's assume that the California Court of Appeals did exactly what you said. They took a very rigorous view of the second fraud of Strickland. The question we have to ask is, is that an unreasonable application of Strickland, an objectively unreasonable application? And I would answer that, yes, it is. How? That's what you need to help us with. Because Justice O'Connor, when she defines the prejudice prong, talks about the reasonable possibility test. And in getting to that point, she does a sort of intellectual exercise in how to get there, and she talks about how, you know, the rule, the motion for new trial standard is not fair. It's not persuasive. The defense bar wants me to apply a sort of a very weak, weak test. She resolves it with the Valenzuela-Bernal standard and also the U.S. versus Aggers standard regarding materiality under Brady, which I think the rule is essentially, if you're a prosecutor and you believe this evidence is exculpatory, you have got to disclose it. You have an affirmative obligation. And so my problem, I understand it's kind of a complicated argument, but my problem is that the Court of Appeals opinion of prejudice and mandate on prejudice is so strong in terms of how to show prejudice, it's almost like you have to disprove the people's case. And that can't be the standard. That's just not the standard. I would disagree with it. Just going right to the text of the opinion under Strickland. It would be with the language of our cases that say even if we conclude that they erred, that it was an erroneous application of Strickland, that we still have to find that it's objectively unreasonable. I mean we're really wrestling with this standard. It's certainly not crystal clear to me. All over the circuit, right. I think all over the country. True, true. And the Supreme Court still has a lot of jurisdictional gaps to fill in enunciating clearly what they meant. That's a good question. As I read this opinion, and I've read it a million times, and I'm sure everyone here has, there's just not an application of federal standards. It's almost as if the court, with all due respect to the DCA, goes out of its way not to apply federal standards to this case. And that's another problem. I mean it's fine to apply state law. Obviously that's the state of California's prerogative. But I just, the state of California, the California Court of Appeals has got to get into more of what prejudice requires under federal standards to do justice to this gentleman's case. Federal standards or Supreme Court standards. Now you put your finger on another problem that we wrestle with. Clearly and contrary.  Supreme Court standards. Okay. Thank you, Mr. O'Brien. Thank you. I appreciate it. He's just argued as submitted, and we will now hear argument in Raul Antonio Vargas.
judges: Farris, D.W. Nelson, Tallman